# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLARENCE E. BRAUN III | : | |
| Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:18-cv-919 (JCH) |
| v. | : | |
| | : | |
| CORRECTIONAL OFFICER | : | OCTOBER 31, 2018 |
| STERNO, et al. | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

On June 1, 2018, the plaintiff, Clarence E. Braun III ("Braun"), an inmate currently housed at Osborn Correctional Institution in Somers, Connecticut, filed a complaint pro se pursuant to title 42, section 1983 of the United States Code against seven Connecticut Department of Correction ("DOC") employees for violating his rights under the First Amendment Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, and the Fourteenth Amendment Due Process Clause. Compl. (Doc. No. 1). The seven defendants are Correction Officers Sterno and McMahon, Captains Valeriano and Nunez, Deputy Warden Laffargue, Warden Erfe, and Commissioner Semple. Braun is suing all seven defendants for monetary, injunctive, and declaratory relief. Id. at ¶ 1. On June 8, 2018, Magistrate Judge William I. Garfinkel granted Braun's motion to proceed in forma pauperis. See Order (Doc. No. 6). For the following reasons, his Complaint is dismissed in part.

## I. STANDARD OF REVIEW

Pursuant to section 1915A of title 28 of the United States Code, this court must review prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. FACTUAL ALLEGATIONS

At all times relevant to his Complaint, Braun was incarcerated at Cheshire Correctional Institution ("Cheshire") in Cheshire, Connecticut. Compl. at ¶ 5. Braun is a devout Native American and was very close with his Elder and spiritual advisor, Tom Flanders. Id. at ¶ 13. The Native American religion requires Braun to carry with him a sacred medicine bag containing objects related to his life experiences and spiritual growth. Id. at ¶ 14. Anything that goes into the medicine bag becomes part of Braun's spiritual growth and was blessed by Flanders. Id. at ¶ 15. Touching or opening the

2

medicine bag by anyone other than Braun, its keeper, is considered a desecration of the bag and the spiritual items contained therein. Id. at ¶ 16.

In order to respect the religious practices of Native American inmates, the DOC has adopted policies on how staff should handle medicine bags and other sacred items. Id. at ¶ 17. DOC Administrative Directive 10.8, section 16, states that "Native American medicine bags shall not normally be handled by staff. In cases where a medicine bag and/or its contents require examination by staff, staff shall instruct the inmate possessing the medicine bag to empty its contents on to a surface for inspection." Id. at ¶ 18; Pl.'s Ex. A (Doc. No. 1 at 27). In practice, however, the staff member typically instructs the inmate to place the medicine bag in a sealed envelope, which is later inspected by the Elder. Compl. at ¶ 19. Although an inmate may not refuse inspection of the medicine bag, DOC staff are not to touch the bag or its contents unless there is contraband present. Id. at ¶ 22; Pl.'s Ex. B (Doc No. 1 at 30).

When grieving the passing of a loved one, it is common practice in the Native American religion for one to cut off a piece of the deceased's hair and place it in his or her medicine bag as a keepsake. Compl. at ¶ 23. When Braun's former Elder and great-grandmother passed away, he placed their hair in his medicine bag and had his new Elder bless it. Id. at ¶ 24. These hairs became the most precious and sacred items in his medicine bag. Id. at ¶ 25.

On June 28, 2016, Braun was removed from his housing unit at Cheshire and placed in a restrictive housing unit ("RHU") pursuant to a disciplinary report. Id. at ¶ 26. After arriving at RHU, Correction Officer Sterno packed and inventoried Braun's

3

property, including his medicine bag. Id. at ¶¶ 27-28. Although he had no reason to believe that the bag contained contraband, Sterno personally opened the bag, dumped its contents on the floor, and kicked and stomped on the items. Id. at ¶ 28. Policy required Sterno to either secure the medicine bag in an envelope for inspection by the Elder or instruct Braun to empty the contents on a flat surface for visual inspection. Id. at ¶ 29. Braun believes that Sterno's actions were malicious because he has a disdain for Native American inmates and is the subject of other lawsuits with similar religious claims. Id. at ¶ 30.

On August 4, 2016, Braun was released from RHU and was approached by another inmate, Richard Nau, who witnessed Sterno dump the contents of the medicine bag on the floor and desecrate them. Compl. ¶ 32; Pl.'s Ex. C (Doc No. 1 at 33). When he retrieved his medicine bag, Braun noticed that several items were missing, including the hair from his Elder and great-grandmother. Compl. at ¶ 33. He immediately wrote to Correction Officer McMahon, Captain Valeriano, and Warden Erfe stating that Sterno had violated his religious freedoms and requesting video surveillance footage from the incident. Id. at ¶ 34; Pl.'s Ex. D (Doc. No. 1 at 35-37). He wrote a similar request to Deputy Warden Laffargue four days later. Compl. at ¶ 35; Pl.'s Ex. E (Doc. No. 1 at 39).

On August 10 and 11, Braun received written responses from Laffargue and Valeriano directing his request for surveillance footage to Captain Nunez for review. Compl. at ¶¶ 35-36; Pl.'s Ex. E. On August 12, plaintiff wrote a request for the surveillance footage directly to Nunez. Compl. at ¶ 39. He also spoke with Nunez on August 17, about the incident with Sterno. Id. at ¶ 41. Nunez told him that he would

speak with Sterno about proper handling of medicine bags and preserve the video from the incident. Id.

Later that day, Nunez sent a letter to Braun stating that his request to preserve the surveillance footage from June 28 had been "compromised" and "could not be completed." Id. at ¶ 42; Pl.'s Ex. F (Doc. No. 1 at 41). Although Braun's request was timely made, Nunez explained that the footage was "not available" and there was no way to retrieve it. Compl. at ¶¶ 42-43; Pl.'s Ex. F. Braun found Nunez's response to be "vague, deceitful, and misleading" because the request was timely made and Nunez did not explain why the footage was unavailable. Compl. at ¶¶ 44-45.

On August 19, at approximately 5:00 p.m., Sterno entered Braun's cell and conducted a "shakedown."[1] Id. at ¶ 46. Braun asked Sterno about the packing of his property on June 28, and Sterno admitted to dumping the contents of his medicine bag on the floor and stomping and kicking the items in disarray. Id. Sterno also mentioned that Nunez had disciplined him for his actions. Id. Based on his conversation with Sterno, Braun believed that the "shakedown" of his cell was retaliation for his complaints against Sterno. Id. at ¶ 47.

On August 22, Braun wrote a response to Nunez's letter asking for clarification on why his request for surveillance footage was "compromised" and "not available." Compl. at ¶ 48; Pl.'s Ex. 1 (Doc. No. 1 at 46). Braun stated that the footage should

---

[1] Braun does not explain this term. A "shakedown" of a prison cell typically means a thorough search of the cell for contraband, such as weapons or drugs. See https://www.dictionary.com/browse/shakedown.

have been preserved and that his request was made within the required thirty days of the incident. Compl. at ¶ 48; Pl.'s Ex. 1. Nunez did not respond to Braun's letter. Compl. at ¶ 48. Braun believes that Nunez conspired with McMahon, Valeriano, Erfe, and Laffargue "to deliberately fail to preserve . . . and/or destroy" the footage. Id. at ¶ 49. He wrote to Commissioner Semple regarding the incident and the failure to preserve the footage, but Semple did not respond. Id. at ¶ 50.

Sterno, Valeriano, Laffargue, Erfe, and Semple are all defendants in another lawsuit filed by another Native American inmate at Cheshire regarding religious freedom violations. Id. at ¶ 52; Michalski v. Semple, No. 3:16-cv-2039 (VAB). As a result of the alleged violations in this case, Braun suffers from terrifying nightmares of different ancestors banishing him and cutting off his hair and scalp, which are the most embarrassing and disgraceful actions in the Native American culture. Compl. at ¶ 57. These nightmares cause Braun to suffer from insomnia, tinnitus, and severe headaches. Id.

### III. ANALYSIS

Braun claims that Sterno violated his religious freedoms under the First Amendment Free Exercise Clause and RLUIPA by dumping his medicine bag and kicking and stomping the sacred items contained therein, to which he later admitted and for which he was disciplined. Id. at ¶¶ 58-65. He appears to be stating a claim of supervisory liability against Valeriano, Erfe, Laffargue, and Semple for failing to take action in response to this incident and/or properly supervise or train their subordinates. Id. at ¶¶ 72-77. Braun is also raising a claim under the Fourteenth Amendment for

"spoliation of evidence" against Nunez, Valeriano, Erfe, Semple, McMahon, and Laffargue for deliberately destroying, or otherwise making unavailable, the video surveillance footage showing Sterno's alleged misconduct, which he claims would have shown a clear constitutional and policy violation. Id. at ¶¶ 66-71. The court will address each of these claims separately.

A. Claim for Declaratory Relief

In addition to damages and injunctive relief, Braun seeks a declaration from this court "that all of the defendants violated [his] rights." Comp. at 17. This request is unwarranted. Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. See In re Combustion Equip. Assoc., Inc., 838 F.2d 35, 37 (2d Cir. 1998). Braun's request for declaratory relief in this case only concerns past actions; specifically, Sterno's mishandling of his medicine bag on June 28, 2016, and the other defendants' failure to preserve the surveillance footage from that incident. He has not identified any legal relationships or issues that require resolution by declaratory relief. See BroadSign Int'l, LLC v. T-Rex Prop. AB, No. 16-CV-04586-LTS-HBP, 2018 WL 3418778, at *5 (S.D.N.Y. July 13, 2018) ("A declaratory judgment action allows a party who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.") (internal quotation marks omitted).

Furthermore, Braun's claims for declaratory relief against the defendants in their official capacities are barred by the Eleventh Amendment because of their retrospective nature. In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court held that an

exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. Id. at 155–56. The exception to Eleventh Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (noting that the exception to Eleventh Amendment immunity set out in Ex parte Young "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief.") (citations omitted); Ward v. Thomas, 207 F.3d 114, 119–20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaratory judgment that Connecticut officials violated federal law in past).

Because Braun does not allege how his request for declaratory relief would remedy a future constitutional violation by the defendants, his request cannot be properly characterized as prospective and, therefore, does not meet the exception to Eleventh Amendment immunity set forth in Ex parte Young. Therefore, his claim for declaratory relief is dismissed.

Similarly, to the extent Braun is suing the defendants in their official capacities for monetary relief, such claims are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159 (1985); Quern v. Jordan, 440 U.S. 332, 342 (1979). All such

claims are hereby dismissed pursuant to title 28, section 1915A(b)(2) of the United States Code.

B. First Amendment Religion Claim

The Free Exercise Clause of the First Amendment requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." Id. (quoting Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990)). Therefore, a prisoner's free exercise claim is "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Id. (quoting Farid v. Smith, 850 F.2d 917, 925 (2d Cir. 1988)). A government action challenged under the Free Exercise Clause "passes constitutional muster if it is reasonably related to legitimate penological interests." Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006) (quoting O'Lone v. Est. of Shabazz, 482 U.S. 342, 349 (1987)) (internal quotation marks omitted).

In Salahuddin, the Second Circuit held that, to state a plausible free exercise claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." 467 F.3d at 274–75; see also Kole v.

Lappin, 551 F. Supp.2d 149, 154 (D. Conn. 2008) (inmate must show that disputed policy substantially burdens sincerely held religious beliefs). "A substantial burden exists where the [government] 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Forde v. Zickefoose, 612 F. Supp.2d 171, 177 (D. Conn. 2009) (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)). In evaluating whether the prisoner has made this showing, this court does not "evaluate the objective reasonableness of the prisoner's belief . . . ." Ford, 352 F.3d at 590. Rather, the court's "scrutiny extends only to whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature." Id. (internal quotations omitted).

More recently, the Second Circuit has expressed doubt as to whether the prisoner must make this threshold showing. See Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) (noting that the Salahuddin holding regarding the substantial burden threshold requirement may have been overruled by Employment Division v. Smith, 494 U.S. 872, 887 (1990), but declining to reach that question); see also Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003) (declining to apply substantial burden test). Nevertheless, district courts in this Circuit continue to apply the substantial burden test in analyzing free exercise claims. See, e.g. Jones v. Annucci, No. 16-cv-3516 (KMK), 2018 WL 910594, **13-14 (S.D.N.Y. Feb. 14, 2018) (applying substantial burden test to inmate's claim that prison officials prohibited him from attending religious services).

If the prisoner states a plausible free exercise claim, the defendant then bears the limited burden of showing that the challenged conduct was reasonably related to legitimate penological interests. Salahuddin, 467 F.3d at 275; Turner v. Safley, 482

U.S. 78, 89 (1987). The court examines a prisoner's free exercise claim with deference to the prison administrator. Forde, 612 F. Supp.2d at 180. Thus, the burden remains with the prisoner to show that the concerns articulated by the government actor were "irrational." Salahuddin, 467 F.3d at 275 (internal quotations omitted).

In this case, Braun has stated a plausible free exercise claim against Sterno for deliberately dumping out his medicine bag and kicking and stomping the sacred items therein. Such behavior constituted a clear violation of a DOC policy prohibiting staff from handling medicine bags, which was created and enforced to protect the religious freedoms of Native American inmates. Thus, the court will permit Braun's First Amendment claim to proceed against Sterno in his individual capacity for damages and in his official capacity for injunctive relief.

C. RLUIPA Claim

RLUIPA prohibits a state or local government from taking any action that substantially burdens the religious exercise of a prisoner unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1; Holt v. Hobbs, 135 S. Ct. 853, 859 (2015). Congress enacted RLUIPA to provide greater protection for religious exercise than is available under the Free Exercise Clause of the First Amendment. Holt, 135 S. Ct. at 859–60; Holland, 758 F.3d at 224 (noting that RLUIPA requires more in terms of the government's justification than the First Amendment).

"A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-

11

2(a). However, the Second Circuit has held that RLUIPA "does not authorize monetary damages against state officers in either their official or individual capacities." Holland, 758 F.3d at 224; Washington v. Gonyea, 731 F.3d 143, 144 (2d Cir. 2013). Thus, a plaintiff may only obtain injunctive or declaratory relief as a remedy for a RLUIPA violation. See Pilgrim v. Artus, No. 9:07-cv-1001 (GLS/RFT), 2010 WL 3724883, *16 (N.D.N.Y. Mar. 18, 2010) (limiting prisoner's RLUIPA claims to injunctive and declaratory relief against state correction officers).

For the same reasons that the court has permitted Bruno's First Amendment free exercise claim to proceed against Sterno, the court will allow the RLUIPA claim to proceed against Sterno. See Michalski v. Semple, No. 3:16-cv-2039 (VAB), 2017 WL 4475994, *8 (D. Conn. Oct. 6, 2017) (permitting RLUIPA claims to proceed based on same factual allegations as First Amendment free exercise claims). However, Bruno's RLUIPA claim may only proceed against Sterno in his official capacity for injunctive relief.

D. Supervisory Liability Claims

Braun raises a separate claim against Valeriano, Erfe, Laffargue, and Semple for "fail[ing] to act" in response to the various constitutional violations alleged and for "disregard[ing] their duties to supervise their subordinates." Compl. at ¶¶ 73-74. It appears that Braun is attempting to state a claim of supervisory liability against these defendants in their individual capacities.

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

12

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); see also Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of respondeat superior does not suffice for claim of monetary damages under § 1983).  A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct.  Wright, 21 F.3d at 501; Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).  "The prisoner must also allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury."  Brown v. Semple, No. 3:17CV1328 (SRU), 2017 WL 4050308, at *4 (D. Conn. Sept. 13, 2017) (citing Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)).

In this case, Braun does not allege that Valeriano, Erfe, Laffargue, or Semple directly participated in the mishandling of the medicine bag.  Instead, he alleges that these four defendants failed to take any action after he notified them of Sterno's misconduct.  See Compl. at ¶ 55.  Braun does not, however, allege that these defendants failed to act before Sterno engaged in the misconduct that injured Braun.  Thus, as the defendants' alleged failure to act occurred after Braun was injured by

Sterno's misconduct, it cannot be the basis for supervisory liability because such liability requires a causal link between the failure to act and Braun's injury.

Braun also alleges that these four officers are liable because they failed to supervise and train their staff in the proper procedures for handling religious artifacts. See Compl. at ¶ 55. To state a failure to train claim, Braun must plausibly allege that these defendants "knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." Samuels v. Fischer, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (internal quotation marks omitted). The Complaint, however, contains no factual allegations to suggest that Sterno had mishandled other religious artifacts prior to Braun's incident, or that Valeriano, Erfe, Laffargue, or Semple knew or should have known that their staff were not following the proper procedures for handling religious artifacts prior to Sterno's misconduct. While Braun alleges that, "[a]t all times relevant to this complaint, these defendants knew about the constitutional violations alleged herein," Compl. at ¶ 73, such conclusory allegations are not sufficient to state a claim for supervisory liability. See Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013) (statements that the defendants were "aware of the alleged security flaw" were too conclusory to state a claim for supervisory liability). Therefore, the court dismisses Braun's First Amendment and RLUIPA claims against Valeriano, Erfe, Laffargue, and Semple based on supervisory liability.

E. Fourteenth Amendment Claim

Braun's third claim is against Nunez, Valeriano, Erfe, Semple, McMahon, and Laffargue for "spoliation of evidence," which he argues is a violation of his Fourteenth Amendment right to due process. Compl. ¶¶ 66-71. This claim is grounded in the alleged failure of these defendants to preserve the surveillance footage from the June 28, 2016 incident involving Sterno. Braun alleges that failure was deliberate and part of conspiracy to prevent him from exposing Sterno's unconstitutional behavior. See id. at 68. Braun has not stated a plausible Fourteenth Amendment claim in this instance.

Spoliation refers to "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Taylor v. City of New York, 293 F.R.D. 601, 609 (S.D.N.Y. 2013) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). A spoliation claim is most often raised in the context of discovery, and a district court may impose sanctions for the spoliation of evidence pursuant to Federal Rule of Civil Procedure 37. See id. A party seeking sanctions for the spoliation of evidence must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Klipsch Grp., Inc. v. ePRO E-Commerce Ltd., 880 F.3d 620, 628 (2d Cir. 2018). Prior to 2015, ordinary negligence could satisfy the "culpable state of mind" requirement. See Learning Care Grp., Inc. v. Armetta, 315 F.R.D. 433, 440 (D. Conn.

15

2016).  However, following the 2015 amendment to Federal Rule of Civil Procedure 37(e), the litigant seeking sanctions for spoliation of electronically stored information must prove that the other party "acted with the intent to deprive [the litigant] of the information's use in the litigation[.]"  Id. at 439–440 (quoting Fed. R. Civ. Proc. 37(e)(2)) (internal quotation marks omitted).  Thus, ordinary and gross negligence no longer satisfy the "culpable state of mind" requirement for spoliation of electronically stored evidence.  Rhoda v. Rhoda, No. 14 CIV. 6740 (CM), 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017).

Braun claims that the defendants' spoliation of the surveillance violated his Fourteenth Amendment right to due process, but a claim of spoliation is really one of state law and, outside the context of discovery or criminal procedure, does not implicate due process.  See Blake v. Dowe, 36 F. Supp.3d 271, 279 (D. Conn. 2014) (dismissing state law claim of spoliation for lack of subject matter jurisdiction); Jarecke v. Hensley, No. 3:07-cv-1281 (JCH), 2009 WL 2030394, *12 (D. Conn. Jul. 9, 2009) (same); but see United States v. Greenberg, 835 F.3d 295, 303 (2d Cir. 2016) (addressing spoliation in context of criminal defendant's due process rights).  The court is not aware of any precedent recognizing spoliation as a valid due process claim for purposes of a section 1983 action.  If through discovery Braun can show that the defendants destroyed, or failed to preserve the video of the June 28, 2016 incident, and did so with a sufficiently culpable state of mind, he may move for sanctions against them pursuant to Federal Rule of Civil Procedure 37(b).

To the extent Braun is attempting to state a claim that the destruction of the video constituted a denial of his right to access the courts under the Fourteenth Amendment, his claim is not ripe for adjudication.  A prisoner's right of access to courts is rooted in the constitutional guarantees of equal protection of the laws and due process.  <u>Avent v. New York</u>, 157 F. App'x 375, *1 (2d Cir. 2005).  "[T]o state a claim for denial of access to the courts, [Braun] must demonstrate that he suffered an actual injury . . . that is, he must allege that defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court."  <u>Baker v. Weir</u>, No. 3:16-cv-1066 (JAM), 2016 WL 7441064, *2 (D. Conn. Dec. 27, 2016).  Braun "must allege not only that the defendant[s'] alleged conduct was deliberate and malicious, but also that the [their] actions resulted in actual injury to [Braun] such as the dismissal of an otherwise meritorious legal claim."  <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (quoting <u>Cancel v. Goord</u>, No. 00-civ-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)).

Here, Braun's due process claim is premature. Because the court is permitting his First Amendment claim to proceed against Sterno, the destruction of the video has not yet deprived Braun of any opportunity to litigate a nonfrivolous cause of action.  Nor can Braun plausibly allege at this stage of the litigation that the destruction of the video has materially prejudiced his First Amendment claim.  Notwithstanding the loss of this evidence, Braun may still ultimately prevail on his First Amendment claim.  Thus, any injury arising from the destruction of the video would occur, if at all, in the future, after Braun's First Amendment claim has been dismissed or resulted in an inadequate

17

settlement.  See Vallade v. Fischer, No. 12-CV-00231 A M, 2014 WL 5481881, at *16 (W.D.N.Y. Oct. 29, 2014) (concluding that the defendants' destruction of the plaintiff's "best and definitive evidence" did not satisfy the actual injury requirement because the plaintiff's suit was pending).  Instead of speculating as to effects that the destruction of the video will have on Braun's First Amendment claim, the court dismisses Braun's access-to-courts claim without prejudice.  See Parrish v. Solis, No. 11-CV-01438, 2014 WL 1921154, at *13 (N.D. Cal. May 13, 2014) (dismissing access-to-courts claim alleging that defendants covered up the evidence that plaintiff needed to prove his pending Eighth Amendment claim).  If Braun's efforts to litigate his First Amendment claim prove unsuccessful, he may reassert his access-to-courts claim at that time. Because the Fourteenth Amendment claim is the only claim Braun is pursuing against McMahon and Nunez, those two officials are dismissed as defendants to this action. Likewise, because the court has already dismissed the supervisory liability claims against Valeriano, Erfe, Laffargue, and Semple, those four officials are dismissed as defendants to this action.

**ORDERS**

(1) The case may proceed on the First Amendment free exercise claim and the RLUIPA claim against Sterno in his individual capacity for damages and in his official capacity for injunctive relief.  All other claims are dismissed pursuant to 28 U.S.C. § 1915A(b).  The Clerk is directed to terminate Valeriano, Erfe, Laffargue, Semple, McMahon, and Nunez as defendants to this action.  However, Braun has the right to replead his supervisory liability claims if he can plausibly allege that the defendants

18

knew or should have known that there was a high degree of risk that Sterno would mishandle Braun's religious artifacts.

(2) The Clerk shall verify the current work address for Sterno with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to him at the confirmed address within **twenty-one (21) days** of this order, and report to the court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the United States Marshals Service. The United States Marshal Service shall, within **twenty-one (21) days** of the date of this Order, serve the documents on the defendants in their official capacities by delivering the necessary documents to the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141, and file a return of service within **thirty (30) days** from the date of this Order.

(4) The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

**SO ORDERED** this 31st day of October 2018 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge